**FILED**

Dec 07 2018, 8:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Makenzie D. Shultz, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 7, 2018 <br><br> Court of Appeals Case No. <br> 79A02-1712-CR-2835 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Randy J. Williams, <br> Judge <br><br> Trial Court Cause No. <br> 79D01-1606-F1-10 |

**May, Judge.**

[1]     Makenzie D. Shultz appeals following her convictions of Level 1 felony neglect of a dependent resulting in death,[1] Level 3 felony neglect of a dependent

---

[1] Ind. Code § 35-46-1-4(a)(1-3) & (b)(3) (2014).

resulting in serious bodily injury,[2] Class A misdemeanor false informing,[3] Class A misdemeanor failure to report a dead body,[4] Level 6 felony obstruction of justice,[5] and two counts of Level 6 felony perjury.[6] Shultz argues she was subjected to double jeopardy, there is insufficient evidence to support her conviction of neglect of a dependent resulting in death, and her sentence is inappropriate. We affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] On Monday, November 16, 2015, Shultz went to check on her daughter B.G., who was allegedly napping. B.G. was dead. Shultz and her boyfriend, Chad Giroux Jr., who is the father of B.G., asked Lauren Mood, Giroux's sister who was visiting, to drive them to the hospital.

[3] At the hospital, Dr. Andrew Alaimo attempted to treat B.G., who had no heartbeat and was very thin with little muscle tone. Dr. Alaimo quickly realized that B.G. had been dead for "quite some time." (Tr. Vol. II at 58.) B.G.'s body was at room temperature and she appeared emaciated. B.G.'s skin

---

[2] Ind. Code § 35-46-1-4(a)(1-3) & (b)(2) (2014).

[3] Ind. Code § 35-44.1-2-3(d)(1) (2014).

[4] Ind. Code § 35-46-19-3 (2008).

[5] Ind. Code § 35-44.1-2-2(a)(3) (2014).

[6] Ind. Code § 35-44.1-2-1(a) (2014).

was green and smelled of decomposition. Dr. Aliamo estimated B.G. had been dead for two days.

[4] Deputy Coroner Mary Jasheway investigated B.G.'s death. She noted the pattern imprinted on B.G.'s face matched the blanket she was brought in with and opined that white marks on B.G.'s nose indicated something pushed her nose up. During the autopsy, Dr. Allan Griggs noted many signs B.G. had been neglected. Dr. Griggs concluded B.G. was dehydrated, constipated, and malnourished. Dr. Griggs deduced B.G. had been dead for longer than twenty-four hours and her cause of death was asphyxiation.

[5] Detective Daniel Long met with Giroux and Shultz separately. Detective Long noticed their stories did not match, so he went to the Shultz and Giroux home to investigate. Detective Long noted B.G. had slept in a downstairs closet in a bed made of blankets stacked on the floor. There was no baby monitor in the closet. Giroux told Detective Long that, on multiple occasions, he had found B.G. in the closet with blankets or clothing over her face. Giroux thought this was being done to muffle B.G.'s crying. Giroux later confessed to Detective Long that B.G. had died Sunday, November 15, 2015.[7] Giroux admitted he and Shultz agreed to find B.G. dead when Mood was present and to react like it just happened.

---

[7] It is unclear when B.G. actually died. Based on the condition of B.G.'s body, the coroner estimated B.G. had been dead for over 24 hours when she was brought to the hospital on November 16. However, Giroux testified B.G. was "cold . . . room temperature" when he held her on November 15. (Tr. Vol. III at 96.)

[6] At trial, a jury found Shultz guilty of all crimes charged: Level 1 felony neglect of a dependent resulting in death, Level 3 felony neglect of a dependent resulting in serious bodily injury, Level 5 felony neglect of a dependent resulting in bodily injury,[8] Level 6 felony neglect of a dependent,[9] Class A misdemeanor false informing, Class A misdemeanor failure to report a dead body, and Level 6 felony obstruction of justice. Shultz then pled guilty to two counts of Level 6 felony perjury. The trial court merged the findings of Level 5 felony neglect and Level 6 felony neglect with the Level 3 felony neglect. The court imposed a forty-four-year sentence with four years suspended to probation.

# Discussion and Decision

## Double Jeopardy

[7] Shultz argues her convictions of Level 1 felony neglect of a dependent resulting in death and Level 3 felony neglect of a dependent resulting in serious bodily injury violate her constitutional right to be free from double jeopardy. *See* Ind. Const. art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). Two offenses are the "same offense" in violation of Indiana's Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another

---

[8] Ind. Code § 35-46-1-4(a)(1-3) & (b)(1) (2014).

[9] Ind. Code § 35-46-1-4(a)(1-3) (2014).

challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). We review *de novo* whether a defendant's convictions violate this provision. *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000), *reh'g denied*.

[8] Shultz claims her convictions violate the "actual evidence test." The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (modification as to cases involving hung jury or acquittal). To determine what facts were used to convict, we consider the charging information, the final jury instructions, the evidence, and the arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied*.

[9] In order to convict Shultz of either version of neglect, the State needed to prove Shultz was:

> A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally: (1) place[d] the dependent in a situation that endanger[ed] the dependent's life or health; (2) abandon[ed] or cruelly confine[d] the dependent; [or] (3) deprive[d] the dependent of necessary support . . . .

Ind. Code § 35-46-1-4(a) (2014) (defining neglect as a Level 6 felony). To convict Shultz of neglect as a Level 1 felony, the State also had to prove Shultz was "at least eighteen years of age" and the neglect "result[ed] in the death of a dependent who [was] less than fourteen (14) years of age." I.C. § 34-46-1-4(b)(3) (2014). To convict Shultz of neglect as a Level 3 felony, the State had to

prove Level 6 felony neglect that resulted in serious bodily injury. I.C. § 34-46-1-4(b)(2) (2014).

[10] Shultz was not formally charged in this case. Instead, she was indicted by a grand jury. The indictments were vague and mentioned only the elements of the crime. The Level 1 felony indictment read as follows:

> The Grand Jury of the County of Tippecanoe duly and legally impaneled upon their oath or affirmation do present that there is sufficient cause to determine during March 17, 2015 through November 16, 2015, in the County of Tippecanoe, State of Indiana, Chad A. Giroux, Jr. and or Makenzie D. Shultz, person(s) having the care of a dependent, to wit: B.G., Whether assumed voluntarily or because of a legal obligation, did knowingly or intentionally place said B.G. in a situation that endangered his/her life or health, abandon or cruelly confine said B.G; and/or deprive said B.G. of necessary support, and further, said offense was committed by a person at least eighteen years of age, to wit: Makenzie Shultz being twenty-one or twenty-two (21-22) years of age and/or Chad Giroux, Jr. being twenty-six (26) years of age and resulted in the death of B.G., a dependent less than fourteen (14) years of age[.]

(App. Vol. 2 at 22.) The indictment for the Level 3 felony stated:

> The Grand Jury of the County of Tippecanoe duly and legally impaneled upon their oath or affirmation do present that there is sufficient cause to determine during March 17, 2015 through November 16, 2015, in the County of Tippecanoe, State of Indiana, Chad A. Giroux, Jr. and/or Makenzie D. Shultz, person(s) having the care of a dependent, to Wit: B.G., whether assumed voluntarily or because of a legal obligation, did knowing or intentionally place said B.G. in a situation that endangered his/her life or health, abandon or cruelly confine said B.G.,

and/or deprive said B.G. of necessary support; and further, said offense resulted in serious bodily injury to B.G.

(*Id*. at 24.) These indictments do not appear to allege any facts to distinguish the act of neglect underlying each charge. *Compare with Ramon v. State*, 888 N.E.2d 244, 254 (Ind. Ct. App. 2008) (charging information alleged separate facts in support of the common elements of the two crimes).

[11] The jury instructions tracked the language of the indictments. (*See* App. Vol. 2 at 118-134.) Thus, they also did not inform the jury which pieces of evidence supported the charge of neglect resulting in death and which distinct other pieces of evidence supported the charge of neglect resulting in serious bodily injury.

[12] As the trial court found when reviewing the double jeopardy argument during the sentencing hearing, there were acts committed by Shultz that justified a second conviction of neglect. Dr. Griggs testified B.G.'s cause of death was asphyxiation. He also concluded that prior to her death, B.G. had been dehydrated, constipated, and malnourished, and those conditions indicative of neglect would have produced "extreme pain." (Tr. Vol. II at 121.)

[13] However, to avoid double jeopardy, the prosecutor needed to separate the facts in support of the multiple counts of neglect and present argument that clarified for the jury the facts it needed to find to support each separate count. During closing arguments, the prosecutor reviewed each count separately, explaining the elements of the count and the evidence that proved those elements.

[14] For the Level 1 felony, neglect resulting in death, the prosecutor presented the evidence of asphyxiation to prove death. (*See* Tr. Vol. 4 at 8.)

[15] Then, when talking about Level 3 felony neglect resulting in serious bodily injury, the prosecutor pointed out B.G.'s other injuries, as she needed to do to demonstrate a separate crime, but she also repeatedly mentioned the asphyxiation:

> Looking at the second charge, the second – as we talked about in jury selection the first, second, third and fourth charges are very similar, but in this case specifically because we're talking about a wide range of time different things are considered for each one as well. Here we're talking about other things outlined in the autopsy report *not just the asphyxiation*. We're also talking about her emaciation, her dehydration, her malnutrition and her impacted bowel. So here the only element that changes is that last one. Elements one and two you can apply the same evidence that you did for count one.

(*Id*. at 10) (emphasis added).

> …*not again just the asphyxiation but also* her malnutrition, her impacted bowel and her dehydration.

(*Id*.) (emphasis added).

> And as far as serious bodily injury goes, you'll have a definition of serious bodily injury and that being serious or permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member, organ or loss of a fetus. *The asphyxiation alone accounts for some of these*, but there are also separate options as the result of the Defendant's conduct.

(*Id*. at 15) (emphasis added).

[16] Although not directly at issue in this appeal because the trial court merged the two lesser counts of neglect into the Level 3 felony conviction, the prosecutor continued this conflation of the asphyxiation with the other injuries while discussing those lesser counts:

> And this count you can apply it very much the same evidence as count two, very much.

(*Id*. at 16.)

> Bodily injury is defined by law, it means any impairment of physical condition including physical pain. And again, you can use the same evidence as Count II and we know from Dr. Griggs that there would have been physical pain. Also, any impairment, I would submit to you that means malnourishment, dehydration, emaciation, impacted bowel, all would be an impairment of her body. By getting serious bodily injury we also have bodily injury.

(*Id*.)

> However, again, I would submit to you we have serious bodily injury, not only in all of the conditions that Dr. Griggs mentioned, but also the *asphyxiation* that's not separate. It's a separate condition, caused at a separate time, but still a consideration. Count IV is just Neglect of a Dependent with no end result that you have to find. This is the same as the others except there is – there just is no fifth element here. And you can apply the same evidence you did in Count II and Count III. And remember for these neglect counts you are considering everything, everything, the whole picture that you've seen. From no longer receiving the right formula, at least not from WIC, to

not taking her to the doctor, to the living conditions on top of the *asphyxiation*.

(*Id*. at 16-17) (emphasis added).

[17]    We regret that we must vacate one of Shultz's convictions for neglect. When the State asked the jury to convict Shultz for the four counts of neglect, the prosecutor explicitly told the jury it could rely on asphyxiation to support all of those counts. Thus, there is a reasonable probability the jury relied on the same evidence to find Shultz guilty of all four counts. Accordingly, we vacate Shultz's conviction of Level 3 felony neglect.[10]  *See Clark v. State*, 732 N.E.2d 1225, 1229 (Ind. Ct. App. 2000) (vacating two attempted arson convictions when all three convictions were based on one act).

## Sufficiency of the Evidence

[18]    Shultz next argues there was insufficient evidence to support her conviction of neglect of a dependent resulting in death. When considering the sufficiency of evidence, "a reviewing court does not reweigh the evidence or judge the credibility of the witnesses." *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We must affirm "if the probative evidence and reasonable inferences drawn

---

[10] Shultz raises a third issue on appeal, which is that her sentence is inappropriate. Because we vacate Shultz's conviction of Level 3 felony neglect, we also vacate the 5-year sentence imposed for that crime, which was to be served consecutive to the 35-year sentence imposed for Level 1 felony neglect. Because trial courts often fashion individual sentences with an eye toward reaching a desired final cumulative sentence, *see, e.g., Sanjari v. State*, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013) (recognizing the trial court's overall plans when sentencing), *trans. denied*, we remand for the court to resentence Shultz in light of the vacated sentence. As we remand for resentencing, we need not address Shultz's argument that her sentence is inappropriate.

from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id*. at 126 (internal citation omitted). Shultz does not dispute the evidence of neglect. Instead, Shultz questions whether there was enough evidence to prove her actions were intentional and whether there was evidence her neglect resulted in the death of B.G.

[19]  As for Shultz's mens rea, we first note the definition of neglect did not require her act to be intentional. *See* I.C. § 35-46-1-4(a) (2014) (defining neglect as an intentional or knowing act).

> Under the child neglect statute a 'knowing' mens rea requires a subjective awareness of a 'high probability' that a dependent had been placed in a dangerous situation. Because, in most cases, such a finding requires the factfinder to infer the defendant's mental state, this Court must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper.

*Pierson v. State*, 73 N.E.3d 737, 741 (Ind. Ct. App. 2017) (internal citations and quotations omitted), *trans. denied*.

[20]  The State points to evidence that Shultz knew not having a proper bed for B.G. was dangerous. Nurse Analei Whitlock testified that, while meeting with Shultz, she explained how to safely put a baby down to sleep. Nurse Amy Guynn testified that, when a mother and child are released from the hospital, the family has a meeting with hospital staff and receives a booklet on safe sleep practices for the baby. Each parent must participate before they can be discharged. Shultz also has another daughter, L.G., who was older than B.G.

and who was cared for by Shultz. Giroux testified Shultz was a good care provider for L.G. This evidence would allow a jury to determine that Shultz knew she was neglecting B.G. *See Pierson*, 73 N.E.3d at 737 (witness testimony about defendant being able to provide basic care for his other children was sufficient to show knowledge); *and see Pierson*, 73 N.E.3d at 741 (evidence was sufficient to prove father knowingly neglected child when he had been instructed on feeding and the child died of malnutrition).

[21] As for Shultz's neglect being the cause of death, the State presented evidence asphyxiation was the cause of death. The coroner listed the cause of death as asphyxia. (Ex. at 30.)[11] Deputy Coroner Mary Jasheway testified to the marks she observed on B.G. during the autopsy. Jasheway explained the marks are referred to as "modeling" and demonstrate something had been up against B.G.'s face. (Tr. Vol. II at 75.) Jasheway also explained that the white areas on the bridge of B.G.'s nose were a sign her nose had been pushed up. Giroux testified he had found B.G. with blankets on her face at least twice. Based on these facts, the evidence was sufficient to prove Shultz's neglect resulted in B.G.'s death. *See*, *e.g.*, *McConniel v. State*, 974 N.E.2d 543, 559 (Ind. Ct. App. 2012) (evidence of malnourishment provided inference neglect was cause of death), *trans. denied*.

---

[11] The State's Exhibits do not have proper page numbers, so we cite to the page number in the electronic PDF.

# Conclusion

Because the jury could have relied on the evidence of asphyxiation to support multiple findings of neglect, Shultz's multiple convictions of neglect subjected her to double jeopardy. However, there was sufficient evidence to convict Shultz of neglect of a dependent resulting in death. Accordingly, we vacate Shultz's conviction of neglect of a dependent resulting in serious bodily injury and remand for the court to resentence Shultz for the remaining convictions.

Affirmed in part, reversed in part, and remanded.

Baker, J., and Robb, J., concur.